IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge John L. Kane

Civil Action No. **12-cv-02395-JLK**

**SUMMIT BANK & TRUST, a Colorado Corporation,**

    Plaintiff,

v.

**AMERICAN MODERN HOME INSURANCE COMPANY, an Ohio Corporation,**

    Defendant.

_____

**ORDER GRANTING AMHIC'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND DENYING SUMMIT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Kane, J.

    This case involves a disputed insurance claim for losses incurred by the burglary of a large vacant building in Greeley, Colorado. Defendant American Modern Home Insurance Company ("AMHIC") and Plaintiff Summit Bank & Trust ("Summit") have cross moved for Partial Summary Judgment, Docs. 38 & 41. Based on the following, AMHIC's Motion, Doc. 41, is GRANTED and Summit's Motion, Doc. 38, is DENIED.

                    I.      JURISDICTION AND VENUE

    I have personal jurisdiction over AMHIC as: (a) it did business in the State of

Colorado at times material to this action; (b) it purposefully availed itself of the rights and privileges of the State of Colorado at times material to this action; and (c) it committed the acts described below with resulting consequences in the State of Colorado.

I have subject matter jurisdiction over this matter per 28 U.S.C. § 1332 as the amount in controversy exceeds the sum of $75,000, and Summit and AMHIC are citizens of different states. I have supplemental jurisdiction over all other claims per 28 U.S.C. § 1367 as they form part of the same case or controversy. Per 28 U.S.C. § 1391, venue is proper in the District of Colorado as: (a) AMHIC transacted business in the State of Colorado, and (b) the events and omissions giving rise to Summit's claims occurred in the State of Colorado.

## II.   SUMMARY JUDGMENT STANDARD AND RULES OF INSURANCE CONTRACT INTERPRETATION

I repeat the catechism that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir.2008). A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Adamson*, 514 F.3d at 1145. In weighing these standards, I draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Because the parties have filed cross motions for summary judgment, I am entitled "to assume that no evidence needs to be considered other than that filed by the parties...."

2

*Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir.2000) (quoting *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.,* 132 F.3d 1316, 1319 (10th Cir.1997). This does not, however, mean that summary judgment is necessarily proper. The motions are to be treated separately, and denial of one does not require the grant of the other. *Id*. (quoting *Buell–Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir.1979)).

In the instant case, the facts material to the issue presented are not in dispute; instead, the parties' quarrel focuses upon the interpretation of terms in an insurance contract. Accordingly, there are no genuine disputes of material fact, and summary judgment is appropriate. Fed.R.Civ.P. 56(c)(2); *Adamson*, 514 F.3d at 1145.

The meaning of each term in an insurance contract is to be determined as a matter of Colorado law, with any ambiguity resolved in favor of Summit, as the insured. *See Pompa v. Am. Family Mut. Ins. Co.*, 520 F.3d 1139, 1141 (10th Cir.2008). Mere disagreement between the parties about the meaning of a term, however, does not create ambiguity. *Union Rural Elec. Ass'n v. Public Utils. Comm'n*, 661 P.2d 247,251 (Colo.1983). One may not read an ambiguity into a term where none exists in order then to resolve the resulting ambiguity against the insurer. *Martinez v. Hawkeye–Sec. Ins. Co.*, 195 Colo. 184, 576 P.2d 1017,1019 (1978) ("[C]ourts will not force an ambiguity in order to resolve it against an insurer."). Also, the mere fact that a term may be susceptible to multiple interpretations, or that it may have different dictionary definitions in different contexts, does not alone create an ambiguity. *See id*.; *see also Allstate Ins. Co. v. Juniel*, 931 P.2d 511, 513 (Colo.App.1996). To the contrary, and as a matter of

basic semantics, a term is only ambiguous when it is reasonably susceptible to multiple interpretations in the context in which it is used. *Juniel*, 931 P.2d at 513; *Terranova v. State Farm Mut. Auto. Ins. Co.*, 800 P.2d 58, 60 (Colo. 1990).

To ascertain whether a certain provision is ambiguous, "the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement." *Radiology Professional Corp. v. Trinidad Area Health Ass'n*, 195 Colo. 253, 256, 577 P.2d 748, 750 (1978)(*citing Christmas v. Cooley*, 158 Colo. 297, 406 P.2d 333 (1965)). While exclusionary clauses exempting the insurer from providing coverage in certain circumstances must be written in clear and specific language and construed in favor of coverage, a court may not add, delete, or rewrite terms to extend coverage. *McGowan v. State Farm Fire & Cas. Co.*, 100 P.3d 521, 523 (Colo. App. 2004). The review of the contract must strive to give effect to all provisions so that none is rendered meaningless. *Chandler-McPhail v. Duffey*, 194 P.3d 434, 437 (Colo.App.2008).

### III.   FACTS

City Center West LP is the owner of a former Hewlett-Packard scanner manufacturing facility located at 700 71st Avenue, Greeley, CO 80634 (the "Property"). Summit is the mortgagee and holds a first deed of trust on the Property. Summit obtained a Blanket Mortgage Security Insurance Policy, No. BM- 14-6835-0836 (the "Policy"), from AMHIC for the Property. The premium for the Policy has been paid and the Policy period extends from April 27, 2009 to until it is cancelled.

The Policy provides coverage for damage caused by vandalism or malicious mischief, which was defined is "the willful and malicious damage to or destruction of the property covered." The provision providing coverage for vandalism or malicious mischief is not, however, without limitation. The pertinent text excluded coverage for loss "by pilferage, theft, burglary or larceny, except this Company shall be liable for willful damage to the building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the building(s)."

Between July 8, 2011 and September 23, 2011, the Property was broken into and burglarized. Copper piping and conduit, among other things, were stolen from the Property. The burglars damaged the Property to extract the copper piping and conduit. At least some portion of the damages to the Property was caused by theft and burglary.

After receiving a Policy Loss Notice and Building Assessment, AMHIC issued payment to Summit in the amount of $321,069.00. This sum represented AMCHIC's reckoning of the losses due to vandalism and malicious mischief, as well as losses due to the burglars' breaking in and exiting of the building, which is covered under the exception to the exclusion of the vandalism provision. Because the Policy excludes coverage for loss by theft, AMHIC denied coverage for amounts requested by Summit which appeared to its investigators to be the result of theft or directly caused by attempts to steal and remove items from the Property. The investigation also revealed that there had been an earlier event in December 2010 where juveniles had vandalized the building. AMHIC believed and communicated to Summit that at least some portion of the damages

5

included in the $321,069.00 payment was caused in that event. AMHIC paid this amount without assessing a separate deductible for this separate event.

## IV.   ANALYSIS

As set forth above, the Policy provides coverage for losses caused by:

> 8. Vandalism or Malicious Mischief, meaning only the willful and malicious damage to or destruction of the property covered. This company shall not be liable for loss:
> b) by pilferage, theft, burglary or larceny, except his Company shall be liable for willful damage to the  building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the
> building(s).

The parties agree that this provision includes coverage for vandalism and excludes coverage for damage caused by "theft" or "burglary".  The parties clash over whether the theft/burglary exclusion applies only to the value of the property stolen or if it also extends to damage incurred to effectuate the theft.  Summit urges that ambiguity forces the former position and accordingly contends that the damage the burglars did to the Property in the process of removing and taking copper wiring and conduit is loss by vandalism and therefore excluded from coverage.  Imagine for a moment that an office inside the Property had a wall-safe where a former Hewlett Packard executive stored his luxury watches. Metaphorically, Summit's argument would conclude that if thieves ripped open and damaged the safe to steal the watches, the watches would be excluded from coverage but damage to the safe would be covered because it is "ambiguous" regarding whether such damage is a "loss due to theft." AMHIC argues that because the damage was done to further the theft, it was loss by theft and therefore excluded.  No

6

ambiguity, no problem. Here, because the safe would never have been damaged but to steal the watches and it was not damaged for the thieves merely to have their jollies, the damage to the safe was not vandalism.[1] Because I find find Summit's contention strained, unreasonable, and anything but "plain and ordinary," I concur with AMHIC.

As indicated, Summit asserts that the theft exclusion is ambiguous and must therefore be resolved in favor of coverage[2]. This assertion, however, is fatally flawed under standard principles of Colorado contract interpretation. The disputed provision has an exception to the exclusion for "willful damage to the building(s) covered caused by burglars in gaining entrance to or exit from the building(s) or any part of the building(s)." That is, the exception to the exclusion states that damage caused by burglars entering or exiting the property will be covered. This phrase resolves any ambiguity as to whether "loss caused by theft" includes collateral damage caused by theft.

Specifically, if the exclusion included all coverage for collateral damage caused by burglars during the course of their theft, then there would be no need for this exception to the exclusion; it would be superfluous. 11 Williston on Contracts § 32.5 (4th

---

[1] To be clear, if the safe *would* have been damaged absent the purpose of thieving, such would constitute "vandalism". *See Smith v. Shelby Ins. Co. of Shelby Ins. Group*, 936 S.W.2d 261, 265 (Tenn.Ct.App.1996) (defining "vandalism," as "ordinarily understood" as "damaging something simply for the sake of damaging it"). The court in *Shelby* considered a vandalism provision identical to the one at issue here and held that a portion of damage done during a theft for which there could have been no purpose other than destruction was vandalism. The remainder of the damage, committed in furtherance of the theft, was not vandalism.

[2] Summit also asserts in its Opening Brief the theory that the theft exclusion is in any event inapplicable because copper wiring and piping are fixtures incapable of being stolen as "theft." Summit's Reply, however, does not address AMHIC's excellent counter argument as to why this is an incorrect theory and Summit does not renew the argument anywhere in its Response to AMHIC's Cross-Motion for Summary Judgment. Therefore, I consider Summit's argument on this point abandoned.

ed.) May 2013; *Livtak Packing Co. v. Amalgamated Butcher Workmen, Local No. 641, AFL-CIO*, 455 F.Supp. 1180, 1182 (D. Colo. 1978). Accordingly, if I accepted Summit's interpretation of the meaning of "by theft", then the exception for damage caused by burglars gaining entry would be rendered meaningless in violation of Colorado law. Giving the exception its plain meaning, the only reasonable interpretation of the exclusion is that collateral damage caused by burglars during the course of their theft is not covered, except for any collateral damage caused by entering or exiting the property.

Interestingly, while Summit appears to give no meaning to the exception when it comes to deciding whether the exclusion is ambiguous, it puts great stock into the exception when further arguing that the exception actually covers the Property damage because it was, according to Summit, "caused by burglars in gaining entrance to or exit from the building(s)." Returning to the safe metaphor, Summit's argument here is that if thieves rip open and damage a safe to steal watches, the safe damage is covered because it constitutes "gaining entrance" and/or "exiting." This position is also not supported by plain and ordinary contract interpretation.

In a case with similar facts and policy language, a court found that holes in a meter box created when thieves were trying to steal copper wiring were excluded from coverage based on a nearly identical policy provision. *General Star Indemnity Co. v. Zelonker*, 769 So.2d 1093, 1094 (Dist Ct. App. Fl. 2000). In *General Star*, the relevant insurance policy stated "We will not pay for loss or damage: b. Caused by or resulting from theft, except for building damage caused by the breaking in or exiting of burglars."

*Id*. at 1094.  Thieves broke into the insured's property and stole copper wiring, doing damage to other items, such as meter boxes and electrical conduit. *Id*.

The *General Star* court first found that holes created in meter boxes and electrical conduit were created in order for the thieves to steal copper wiring. *Id*. Therefore, on a "plain reading" of the relevant insurance policy, such damage was caused by or resulting from theft. *Id*. (citing *Smith,* 936 S.W.2d at 265 ("The concept of theft is entirely different [from vandalism]. A thief enters a building in order to steal something; certainly a thief's primary focus is not the malicious defacing, destroying, or damaging of property. If the motivation and end result is that of theft and the claimed loss is '[c]aused by or result[s] from [that] theft,' there is no coverage.")) The court continued to address the exception and found that it was inapplicable. *Id.* "We think the plain meaning of [building damage caused by the breaking in or exiting of burglars] is that the policy provides coverage where thieves bodily enter or exit the building, as by breaking a door or window. It does not apply to the breakage of the meter box or electric conduit." *Id. Accord Certain Underwriters at Lloyds London v. Law*, 570 F.3d 574 (5th Cir. 2009) (damage to property inflicted solely in furtherance of theft fell within the policy's theft exclusion, not within the coverage provided against vandalism); *Essex Ins. Co. v.Eldridge Land, L.L.C.*, 2010 WL 1992833 (Tex. App. 2010) (unpublished decision)(denying coverage under identical theft exclusion where damage to sheetrock, electrical conduit boxes, and wall coverings was caused by theft of copper wiring and piping and holding that "causing "building damage" by 'breaking in' contemplates the gaining of bodily entry into the interior space of a building, not knocking holes in walls once inside").

Summit's citations to cases in which courts have found theft exclusions to be ambiguous are unpersuasive. The authority marshalled by Summit variously declines to apply Colorado law with regard to interpreting provisions so that none are rendered superfluous, are contradicted within their district, and/or are off point by either using policy language different from that at issue in this action or by not indicating what relevant policy language they were interpreting at all.  Accordingly, Summit's contention that there is a split of authority among the courts which is evidence of an ambiguity that must then in turn be resolved in favor of the insured is disingenuous and fails. Moreover, well-reasoned case law is in accord with AMHIC's position on a plain reading even without resort to the exception to the exclusion.  *See e.g.*, *Pacific Indem. Co. v. N.A., Inc.*, 172 S.E. 2d 192, 194 (Ga. App. 1969)(holding that because the purpose of theft exclusion was to exclude loss by destruction to the insured premises by theft or occurring in connection with theft, there was no recovery for property damage from the removal of copper flashing).  Giving the instant Policy its plain and ordinary meaning, as I must under Colorado law, I hold that there is no question that the theft exclusion in the instant Policy unambiguously excludes coverage for any damage directly caused by and for the purpose of  theft or burglary at the Property and that its gaining entrance/exiting exception contemplates more than "knocking holes in walls once inside."

## V.     CONCLUSION

The Policy at issue in this case contains a clear and unambiguous exclusion

for any losses to the Property caused by "theft" and/or "burglary." Under Colorado law, this exclusion precludes coverage not only for any and all items actually removed from the Property during the course of a theft, but also for any collateral damage caused in furtherance or as a result of the theft, with the exception of damage caused by the burglars breaking into or exiting the Property or parts of the Property. What will always constitute "breaking into or exiting," I cannot say, but what does not constitute "breaking into or exiting" is damaging switchboards, transformers, substations, etc. to obtain the circuitry and piping within. AMHIC's Motion, Doc. 41, is GRANTED and Summit's Motion, Doc. 38, is DENIED.

DATED:    July 15, 2014                    BY THE COURT:

                                           *s/John L. Kane*
                                           John L. Kane, U.S. Senior District Judge